[Cite as *State v. Linder*, 2018-Ohio-741.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 105462**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MARVIN BAXTER LINDER

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART
AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-608207-E

**BEFORE:** Jones, J., Keough, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** March 1, 2018

**ATTORNEY FOR APPELLANT**

Russell S. Bensing
600 IMG Building
1360 East Ninth Street
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Jillian Eckart
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

**{¶1}** In this appeal, defendant-appellant Marvin Baxter Linder ("Linder") contends that his counsel was ineffective in representing him on his pro se motion to withdraw his plea. He further contends that the trial court abused its discretion by denying his pro se motion to disqualify counsel. For the reasons that follow, we find that Linder's counsel was not ineffective, and thus we uphold Linder's plea, but remand the case for resentencing with new counsel.

## I. Procedural and Factual Background

**{¶2}** In July 2016, Linder, along with five codefendants, was charged in a 21-count indictment. The charges related to drug trafficking as part of a criminal gang. Linder retained counsel to represent him.[1]

**{¶3}** Linder, through counsel, engaged in pretrial procedures and practices with the state. During plea negotiations, the state left two offers on the table in regard to sentencing: (1) a recommended prison range of 8 to 12 years, or (2) a recommended prison range of 6 to 15 years.

**{¶4}** The case was set for trial, and on the date trial was scheduled to commence, the trial court entered an order allowing Linder time in the courtroom to meet with his mother and father. After the meeting with his parents, Linder agreed to plead guilty. The agreement was that he would plead guilty to 13 counts of the indictment, and the

---

[1] Linder had two retained attorneys during the trial court proceedings. He discharged his first counsel and his second retained counsel is the counsel at issue in this appeal.

parties would recommend to the court a sentencing range of 6 to 15 years. The trial court accepted the plea, finding that Linder knowingly, intelligently, and voluntarily entered into it. The court set the matter for sentencing.

{¶5} Three days prior to the sentencing date, Linder filed two pro se motions: one to disqualify his counsel and have new counsel appointed, and the other to withdraw his guilty plea. Counsel first learned of the motions on the day of sentencing, which was when the motions were considered by the trial court, prior to the imposition of sentence.

**Motion to Disqualify Counsel**

{¶6} Linder addressed the court, and told it that his counsel had failed to show Linder most of the discovery he obtained from the state. Linder also complained that he provided counsel with a list of witnesses whom Linder believed would have testified on his behalf at trial, but his counsel failed to contact any of them. Linder further told the court that "they made me take a deal against my will."

{¶7} The trial court judge told Linder that some of the discovery that the state provides to defense counsel is for counsel only; it is not meant for the client to see. The court further told Linder that

> It seems to me [counsel has] done a lot on your behalf. You just told me on the record everything that you know he has. So, he has police reports, he has statements, he has photos. He has all of this evidence, and you are just complaining because you haven't seen it all, but he has it. It's not a situation where you are coming in here and telling he hasn't retrieved anything for you, that there's all this outstanding discovery, that there's statements that exist that you don't have.
>
> I don't see what he hasn't done for you. You just put on the record everything that he's done for you, not to mention all the pretrials that have

been conducted as well.

{¶8} Linder responded that he told counsel he had not been interested in taking a plea, but had wanted to go to trial instead.

{¶9} Linder's counsel addressed the court. He stated that "[i]t's my duty, and I took an oath to defend people the best way possible and sometimes that means that I have to do things that even they don't understand." Counsel then told the court that even if it did not sentence Linder to maximum, consecutive time, he was still exposed to a significant sentence of at least 20 years because of the serious nature of the charges and the numerous gang and gun specifications.

{¶10} In response to Linder's complaint about not seeing most of the discovery provided by the state, counsel told the court that he was "walking a fine line of still maintaining privilege," but that Linder was concerned that, due to his inability to view some of the discovery, he had no way of knowing whether counsel was just "making up" statements. Counsel told the court that he was not going to "compromise [his] license because someone challenges whether [he is] telling the truth * * *."

{¶11} Counsel further explained his advocacy for, and relationship with, Linder as follows:

> No, he did not inspect the witness statement, but we have been over it time and time again what evidence would be presented against him. His attitude [was], I'm going to go to trial anyway. [It had] nothing to do with whether or not there were defenses, but just that he wanted to go to trial, and I told him repeatedly I wasn't going to let him walk himself over a cliff just because.

> The court graciously allowed his parents time alone with him, cleared the

courtroom. I stepped aside and even his father had a frank discussion with him that said, use your head. I raised you better than this. You are guilty of some stuff. This is fair and adequate.

He wasn't pressured. As a matter of fact, he stated in open court and on the record that no promises or threats were made to get him to take the plea. * * * [G]etting him to a point where he did take this plea was the best that could be done for him under the circumstances after going over every possible thing that would come up in court, including statements he made, evidence that was in his phone, things that his family continued to post on Facebook, talk to him about over the phone while he was in jail and to blindly say, so what, I want to go to trial was not in his best interest.

So, I stand proud on the fact we were able to reach a plea offer. As a matter of fact, we started that day of trial with an eight-year minimum and the State and I even on the day of trial graciously continued to work to put something together that would benefit Mr. Linder. And I believe that at the end of the day and after almost a whole day's work in court, we were able to hammer out something that ultimately I believe will result in a fair resolution of this.

I didn't neglect any of my duties. If anything else, I'm trying to save Mr. Linder from himself.

{¶12} After counsel stated the above, Linder then complained that counsel had only been to see him three times in jail, which were brief, two to three minute visits. Linder stated that because the visits were so brief, he and counsel never discussed his defense. The court reviewed the docket and its notes, detailing other times, in addition to the three visits, that Linder interacted with counsel. In doing so, the court made reference to a psychological evaluation that Linder had, and stated "[t]hen your reports came back and those were the ones to determine how to handle Mr. Linder." At that point, defense counsel interjected, "Your Honor, if the court remembers, the report came back that he was malingering." The court recalled that the malingering issue was

addressed.

{¶13} Counsel informed the court that, from the beginning of the case, Linder had been apprised of the state's evidence: "This evidence has been in front of him. This evidence has been irrefutable for two years. Mr. Linder knows that, [so] my comment [to him] was, don't play games with going to trial, you are only going to hurt yourself." Counsel further commented, "I will stand on the work that's been on the recommendation based on the report that came back after all the time he spent at Northcoast and the fact that Mr. Linder knows what he's been doing, including filing these motions today."

{¶14} The assistant prosecuting attorney told the court that counsel's representation that some of the discovery the state provided to the defense was marked "counsel only" was accurate. The assistant prosecuting attorney also told the court that "all of the evidence the State has provided throughout this entire case has remained the same."

{¶15} Thus, the record demonstrates a robust colloquy, with Linder maintaining that counsel did not sufficiently represent him, and counsel maintaining that he did. Counsel's final commentaries to the court included him saying the following: (1) "I can't even formulate the words to sit here and listen to this man lie and say he knows nothing and I didn't discuss evidence * * * his attitude was so what, I want to go to trial anyway"; (2) "It's the game that not only he is playing today but was playing leading up to taking a plea [but] I continue to say it is in his best interest to not let him walk himself over a cliff"; and (3) "Don't lie."

{¶16} Noting the work that counsel had done on behalf of Linder, and that Linder had not previously voiced any dissatisfaction with counsel, but, in fact stated at the plea hearing that he was satisfied with him, the trial court denied the motion to disqualify counsel.

**Motion to Withdraw Plea**

{¶17} The trial court first heard from Linder's counsel on Linder's request to withdraw his plea. Counsel told the court that all of the constitutional rights that Linder waived in pleading guilty were explained to him in the plea colloquy. He told the court that he reviewed the waiver of the rights with Linder "over and over and over" again, but that "[o]ne of the sticking points * * * [was that] Mr. Linder [did not] understand that one witness' testimony is enough, if believed by the jury, to be sufficient evidence to possibly result in a conviction." Counsel's position, therefore, was as follows:

> So, with regard to withdrawing his guilty plea, in addition to everything that was stated in open court, in addition to everything that I counseled him about in getting him ready to take the plea, I will say since family was included and therefore confidentiality was broken, every single thing about what he was giving up was discussed with his mother and his father as well. This plea was entered into knowingly, intelligently, and voluntarily because that was in Mr. Linder's best interest.

{¶18} Linder responded that, during the meeting, counsel arranged, and the court allowed, for him to talk to his parents, he was "basically forced * * * to take the deal, not by [defense counsel] but by my mother and father. I told them I did not want to take the deal. I wanted to go to trial."

{¶19} The trial court, reviewing the official transcript, informed Linder that he (1)

never indicated at the plea hearing that he was having any issues or difficulties with the plea, (2) never hesitated, (3) indicated that he understood all of the constitutional rights he was waiving, (4) indicated that he understood the possible sentencing penalties, including that the trial court was not bound by the recommended sentencing range.

**{¶20}** Linder continued to maintain that he was "forced and pressured by my parents to take my plea." Counsel responded:

> Your Honor, my only comment with regard to all of that is * * * the colloquy Mr. Linder has engaged us in * * * can only be one of two things. It can either be a continuation of the kind of things he tried back in the summer of last year to manipulate this court and this process, or Northcoast did a remarkable job of restoration. * * * I want the record to reflect that he's mischaracterized not only his relationship with me but the conversations he had with his mom and dad. His mom and dad didn't pressure him. His mom and dad begged him to do the right thing. I don't know where the attitude, the resistance and the untrue allegations of this morning came from, but I would ask the court to continue with the sage advice he got from mom and dad and keep the plea.

**{¶21}** The trial court denied Linder's motion to withdraw his plea, and asked counsel what he had to say on Linder's behalf relative to sentencing. Counsel told the court that because he never received, nor was aware of until that day, Linder's pro se motions to disqualify him and withdraw his plea, he came "prepared to * * * talk about

how Mr. Linder took full responsibility for his actions and is remorseful." Counsel further told the court that "it's hard to stand here in front of you and make that claim after the hearing that we just had." Nonetheless, counsel told the court that he believed that Linder could "change his life and one day be a contributing productive citizen," and he hoped that the court would not "hold * * * what we've been through against him and sentence him just on what would have been presented had we gone to trial."

{¶22} The state outlined the case that would have been presented against Linder, and in doing so, presented two law enforcement officials who informed the court about Linder's role in the criminal gang. Thereafter, the trial court imposed a nine-year prison term on Linder. Linder now appeals, presenting the following two assignments of error for our review:

> I. The Defendant was denied the assistance of counsel, by virtue of his attorney's complete abandonment of his role as an advocate for his client, in violation of Defendant's rights under the 6th Amendment to the Constitution of the United States and Article I, Section 10 of the Ohio Constitution.

> II. The trial court erred and abused its discretion in failing to disqualify counsel and to permit counsel to continue to represent Defendant.

## II. Law and Analysis

{¶23} The two assignments of error are interrelated and will be considered together. Linder's contention in this appeal is that his plea was not knowingly, intelligently, and voluntarily made because of his counsel's deficient performance, and that his counsel's continued representation of him left him without counsel, because counsel essentially defended his own work on the case rather than advocate for Linder.

**{¶24}** According to Linder, we should review his ineffective assistance of counsel claim under a structural-error analysis. A structural error is a constitutional defect that affects the framework within which the trial proceeds, rather than simply being an error in the trial process itself. *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, ¶ 20. Structural error gives rise to a conclusive presumption of prejudice as a matter of law and thus requires automatic reversal. *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 9-10. A structural error permeates the entire conduct of a trial so that the trial cannot reliably serve its function as a means for determining guilt or innocence. *Arizona v. Fulminante*, 499 U.S. 279, 309-310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The Ohio Supreme Court has admonished courts to apply structural error with caution. *State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, ¶ 24; *see also Colon* at ¶ 21.

**{¶25}** To establish a claim that counsel was ineffective under the Sixth Amendment, a defendant normally must establish both that counsel performed deficiently and that he or she was prejudiced by the deficient performance. *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 56, citing *Strickland v. Washington*, 466 U.S. 668, 686, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The United States Supreme Court has "uniformly found constitutional error without any showing of prejudice when counsel was * * * totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), fn. 25; *Strickland* at 692 ("Actual or

constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.").

{¶26} Upon review, we find that the structural error analysis does not apply to this case. Counsel was neither "totally absent" nor "prevented from assisting" Linder. Rather, the record demonstrates that it was counsel's belief that he had, and was, advocating for the best possible outcome for Linder based on his confidential communications with Linder and the evidence the state had against him. Thus, we will review to determine whether Linder suffered prejudice because of counsel's performance.

{¶27} That is, a reviewing court will not deem counsel's performance ineffective unless the defendant can demonstrate that counsel's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance. *Strickland* at 687-688; *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1998). The Ohio Supreme Court has held that "judicial scrutiny of counsel's performance is to be highly deferential and that reviewing courts must refrain from second-guessing the strategic decisions of trial counsel." *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

{¶28} Furthermore, in reviewing an ineffective assistance of counsel claim when a defendant was represented by retained counsel, as was the case here, it has been held that the test is "whether the accused, under all the circumstances including the fact that he had retained counsel, had a fair trial and substantial justice was done." *State v. Hester*, 45 Ohio St.2d 71, 80, 341 N.E.2d 304 (1980).

{¶29} In light of above, we review the plea to determine counsel's performance in representing Linder at that proceeding. The record demonstrates that both prior to the plea and during the plea proceeding counsel advocated on Linder's behalf. The record also demonstrates that the trial court fully complied with all the Crim.R. 11 requirements in taking his plea. Appellant indicated that he understood the rights he was waiving, that he was freely and voluntarily waiving them, and the possible penalties that could result from the plea. He further indicated that he was satisfied with his counsel.

{¶30} Moreover, in addition to not raising any concerns about his plea at the actual plea hearing, Linder told the court at the hearing on his pro se motions that it was his parents, not counsel, who forced him to take the plea: "I was basically forced to * * * take the deal, not by [counsel] but by my mother and father. I told them I did not want to take the deal. I wanted to go to trial." But, again, Linder never raised any concern at the plea hearing.

{¶31} Therefore, in reviewing for an abuse of discretion,[2] we find no such abuse in the trial court's decision to deny Linder's presentence motion to withdraw his plea. And for the reasons already discussed, we find that counsel was not ineffective in his representation of Linder.

{¶32} In his second assignment of error, Linder contends that the trial court abused its discretion by not disqualifying counsel. In line with what we have stated above, we hold that counsel's representation of Linder at the hearing on the motion to withdraw the

---

[2] See State v. Xie, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992).

plea was proper.    However, as counsel himself admitted in regard to sentencing, it was "hard to stand here in front of you and make [a] claim [of Linder's remorse] after the hearing that we just had."    And even though counsel still advocated on behalf of Linder, we nonetheless find that, under the circumstances of this case, counsel should have been disqualified from representing Linder at sentencing.

{¶33} Therefore, the first assignment of error is overruled and the second assignment of error is sustained only as it relates to sentencing.    The plea is upheld, but the case is remanded for resentencing with new counsel.

{¶34} Affirmed in part; remanded in part for further proceedings consistent with this opinion.

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

KATHLEEN ANN KEOUGH, P.J., and
ANITA LASTER MAYS, J., CONCUR